| | | | | |
|---|---|---|---|---|
| Minute Order Form (06/97) | | | | |

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 7310 | **DATE** | 2/27/2001 |
| **CASE TITLE** | STANLEY SLAVEN vs. THE CITY OF CHICAGO, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER: there is no genuine issue of material fact on the claims Slaven asserts against defendants Galligan, Miedzianowski, Stack and the City of Chicago. Defendants' motion for summary judgment is, therefore, granted in its entirety. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 28 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FEB 27 PM 5:14 | | |
| | | | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

STANLEY SLAVEN, )
)
    Plaintiff, )
)
v. ) No. 95 C 7310
) Paul E. Plunkett, Senior Judge
THE CITY OF CHICAGO, a municipal )
corporation, JOHN GALLIGAN (#2430), )
JOE MIEDZIANOWSKI (#6751), ) DOCKETED
EDWARD STACK (#2228), JOHN DOE, )
) FEB 2 8 2001
    Defendants. )

## MEMORANDUM OPINION AND ORDER

In this suit, plaintiff alleges that defendants Galligan, Miedzianowski and Stack (collectively, "the police officer defendants") are liable to him under 42 U.S.C. § ("section") 1983 for violating his Fourth Amendment rights and under federal and state law for maliciously prosecuting him. He also alleges that the City is responsible for their violation of state law under the doctrine of respondeat superior. Defendants have filed a Federal Rule of Civil Procedure 56(c) motion for summary judgment. For the reasons set forth below, the motion is granted.

### Facts

On December 13, 1993, Galligan prepared a complaint for a search warrant. (Defs.' LR 56.1(a)(3) Stmt., Ex. E at 1.) In the complaint, Galligan said that a reliable informant told him that

-1-

Slaven had a fully operational and loaded "B/S 9MM semi-automatic pistol" in the bedroom of his basement apartment at 5732 W. Leland. (Id. at 2.) According to the complaint, Galligan checked Slaven's criminal record and discovered that he had been convicted of a felony in 1983. (Id. at 3.) He also verified that there was a basement apartment at 5732 West Leland and that there were no weapons registered to Slaven at the address. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 23-24.) On the basis of the information in the complaint, a judge issued a warrant to search Stanley Slaven and the basement apartment at 5732 West Leland and to seize "a B/S 9MM semi-auto pistol, or ammunition" and "any item or piece of paper to show that the person named in the warrant is a residen[t] or otherwise controls the premise[s]." (Defs.' LR 56.1(a)(3) Stmt., Ex. E. at 1.)

The next day, Galligan, Miedzianowski and Stack conducted a surveillance of the apartment on Leland. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 28-29.) During the surveillance, Stack heard a radio call that said a man was picking up guns in the area. (Id. ¶ 30.)[1] Stack told dispatch that they would handle the call. (Id. ¶ 31.)[2]

The police officer defendants went to the basement apartment and kicked in the door.[3] (Pl.'s LR 56.1(b)(3)(B) ¶ 6.) They found Curtis Coker in the apartment with a gun carton under his arm. (Id. ¶ 6; Defs.' LR 56.1(a)(3) Stmt. ¶ 32.) Galligan opened the carton and found a loaded AK-47 inside. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 33.)

---

[1] Having failed to controvert this fact statement, Slaven is deemed to have admitted it. See LR 56.1(b)(3)(B).

[2] See n.1

[3] The police officer defendants deny kicking in the door and various other details of the search as recounted by Slaven. For the purposes of this motion, however, we must credit Slaven's version.

Sometime thereafter, Slaven knocked on the apartment door. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 9.) The officers pulled Slaven into the apartment, handcuffed him and started searching the apartment. (Id. ¶¶ 12, 14.) Galligan and Stack found Slaven's gym bag in one of the bedrooms. (Defs.' LR 56.1(a)(3) Stmt. ¶ 41.) Galligan also found a .45 caliber pistol and ammunition on top of the stereo. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 42.)[4] The officers did not find a B/S 9 MM semi-automatic weapon in the apartment. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 17.)

Slaven was arrested and charged with unlawful use of a weapon. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 44-46.) Slaven was indicted by a grand jury. (Id. ¶ 47.) In 1995, Slaven was acquitted of the charge. (Id. ¶ 51.)

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

---

[4] See n.1.

## Discussion

In Count I, plaintiff alleges that the police officer defendants violated his Fourth Amendment rights "to be free from unlawful arrest, imprisonment, search, seizure and detention." (Compl. ¶ 26.) To the extent Slaven is pressing an unlawful search claim, it is dismissed. "Fourth Amendment rights are personal rights . . . [that] may not be vicariously asserted." Rakas v. Illinois, 439 U.S. 128, 133-34 (1978) (internal quotation marks and citation omitted). Slaven can assert a Fourth Amendment unlawful search claim only if he had a legitimate expectation of privacy in the Leland apartment. Id. at 143. Viewed favorably to Slaven, the record establishes that he did not.

Though he occasionally spent the night there, Slaven did not reside in the Leland apartment, had not slept there for two weeks before he was arrested and had not even visited the apartment in the days just prior to his arrest. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 10; id., Ex. 11, Slaven Dep. at 50, 78; Consolidation Defs.' LR 56.1(a)(3) Stmt., Pl.'s LR 56.1(b) Resp. & Defs.' LR 56.1(a)(3) Reply, Ex. C, Slaven Dep. at 145.) Moreover, he had no keys to the apartment and on the day of his arrest he had to knock to gain entry. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 9, 11; id., Ex. 11, Slaven Dep. at 79.) Finally, though Slaven kept some personal belongings in one of the bedrooms, there is no evidence that he locked the bedroom door or took any other steps to protect his privacy. In short, there is nothing in the record to suggest that Slaven had a legitimate expectation of privacy in the Leland apartment. See United States v. Duprey, 895 F.2d 303, 309 (7th Cir. 1989) (listing the factors that demonstrate a legitimate expectation of privacy). Consequently, any Fourth Amendment search claim he may have tried to allege is dismissed.

He does, of course, have standing to assert a Fourth Amendment unlawful arrest claim. He cannot prevail on that claim, however, if the defendants had probable cause to arrest him. Schertz

v. Waupaca County, 875 F.2d 578, 582 (7th Cir. 1989) ("[T]he existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest."). Probable cause is a "practical, nontechnical conception" that requires an "evaluation of the totality of the circumstances." United States v. Rucker, 138 F.3d 697, 700 (7th Cir. 1998) (internal quotation marks and citations omitted). "[P]olice officers have probable cause to make a warrantless arrest when they have trustworthy information sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense." Id. Though police officers cannot constitutionally base an arrest on information of "questionable reliability," see Hebron v. Touhy, 18 F.3d 421, 423 (7th Cir. 1994), they can constitutionally base an arrest on a tip from an informant, if the tip is shown to be reliable "by the informant's past record of reliability . . . or by other methods." United States v. Scott, 19 F.3d 1238, 1242 (7th Cir. 1994). Slaven was charged with unlawful use of a weapon by a felon, a crime that is committed when a convicted felon possesses any firearm "on his person or on his land or in his own abode." 720 ILL. COMP. STAT. 5/24-1.1(a). The record establishes that the defendants had probable cause to arrest Slaven for this crime.

The arrest was based primarily on information Galligan and Miedzianowski had received from a confidential informant ("CI"). It is undisputed that this CI had provided them with information in connection with two prior cases that led to the recovery of unlawful or unregistered weapons. (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 11-12.)[5] There is also no dispute that the CI told Galligan

---

[5]Slaven "denies" the facts in paragraphs 11-20 of Defendants LR 56.1(a)(3) Statement because he was permitted no discovery concerning the CI and, thus, "has no reason to believe the CI exists." (See, e.g., Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 10.) We denied Slaven discovery about the CI because he did not have sufficient justification for piercing the warrant affidavit and overcoming the informer's privilege. See Slaven v. City of Chicago, No. 95 C 7310, 1999 WL 160313, at *3-5 (N.D. Ill. Mar. 17, 1999). Because Slaven was not entitled to discover the CI's identity, his inability to do so is not a proper basis for denying the facts defendants assert about the CI.

that he visited Slaven at the Leland apartment and saw him remove a 9MM semi-automatic pistol from his waistband and place it on a dresser in the bedroom. (Id. ¶ 14.) The CI also told Galligan that he handled the gun and found it to be operational and loaded and that the gun was in the apartment when the CI left. (Id. ¶¶ 17-18.) The CI described Slaven to Galligan and told Galligan that Slaven lived at the Leland apartment. (Id. ¶¶ 19-20.) Slaven admits that Galligan checked his criminal record after receiving this information and discovered that he had been convicted of robbery in 1983. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 22; Defs.' LR 56.1(a)(3) Stmt., Ex. E at 3); see 720 ILL. COMP. STAT. 5/18-1(b) (classifying robbery as a Class 2 felony). He also admits that Galligan verified the existence of the Leland apartment and that there were no guns registered to Slaven at that address. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 23-24.) When they executed the search warrant, defendants found a .45 caliber pistol and ammunition and Slaven's personal belongings in the apartment. (Id. ¶¶ 41-42; Defs.' LR 56.1(a)(3) Stmt. ¶¶ 41-42.) Taken together, these undisputed facts are sufficient to lead a prudent person to believe that Slaven was a convicted felon who possessed a firearm "on his person or on his land or in his own abode," in violation of 720 ILL. COMP. STAT. 5/24-1.1(a). See Rucker, 138 F.3d at 700-01 (holding that reliable informant's tip coupled with police officer's observations gave him probable cause to arrest).

Slaven has no evidence to contradict those facts. He argues, however, that Miedzianowski's 1998 indictment for his involvement in a decade-long drug trafficking conspiracy casts sufficient doubt on the veracity of the CI information on which the search warrant affidavit and Slaven's arrest were based to merit a trial. There are a number of problems with this argument. First, the warrant affidavit was prepared by Galligan, not Miedzianowski, and Galligan has not been linked to the drug

conspiracy.[6] (See Defs.' LR 56.1(a)(3) Stmt., Ex. E at 3.) Moreover, even if Miedzianowski had prepared the warrant affidavit, his subsequent indictment would not destroy its credibility. Miedzianowski is accused of a participating in a conspiracy the objectives of which were: "(1) to obtain drugs and drug proceeds from drug dealers through deception, robbery and extortion; (2) to promote and protect the drug trafficking of coconspirators; and (3) to extort money from drug dealers by promising to 'fix' criminal cases." (Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. 1, Padilla Plea Agreement at 3.) Miedzianowski is not accused of retaliating against those who refused to become members of the conspiracy, the conduct Slaven alleges in this case. Finally, even if Miedzianowski were the only officer involved in this case and had been indicted for precisely the conduct Slaven alleges, Slaven would still not have enough evidence to get to trial. Though he claims that Miedzianowski wanted him to join the drug conspiracy, Slaven never spoke directly to Miedzianowski. Rather, he says that Miedzianowski extended the invitation through Slaven's friend Lewis Santiago. (See Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 1-2.) Slaven, however, has offered no evidence from Santiago on this point. Instead, he relies on his own deposition testimony in which he recounts the story Santiago told to him. (See id.) That testimony is inadmissible hearsay, which does not create a triable issue of fact. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996) ("[A] party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment.").

---

[6]Slaven requested, and was granted, leave to file a surreply based on a media report that Galligan was indicted as a member of the conspiracy and was accused of, among other things, applying for bogus search warrants. Slaven, however, never filed a surreply.

In short, viewed favorably to Slaven, the record establishes that the police officer defendants had probable cause to arrest him. They are, therefore, entitled to judgment as a matter of law on the section 1983 unlawful arrest claim he asserts against them in Count I.

Even if the police officer defendants did not have probable cause to arrest Slaven, they would still have qualified immunity on the unlawful arrest claim. Qualified immunity protects government officials from liability as long as their conduct "does not violate clearly established rights of which a reasonable person would have known." Wollin v. Gondert, 192 F.3d 616, 622 (7th Cir. 1999) (internal quotation marks and citation omitted). In the probable cause context, defendants are entitled to qualified immunity if a reasonable officer, in light of the information available to the defendants at the time of plaintiff's arrest, could have believed that there was probable cause to arrest. Id. at 622-23. A reasonable officer who (1) was told by a reliable informant that Slaven lived in the Leland apartment and kept a working, loaded gun there, (2) knew that the Leland apartment existed, (3) knew that Slaven was a convicted felon and that there were no guns registered in his name at that address, and (4) found a gun and Slaven's personal belongings in the apartment, could have believed that Slaven had committed the offense of unlawful use of a weapon by a felon. Thus, even in the absence of probable cause, the police officer defendants would have qualified immunity on the unlawful arrest claim in Count I.

The existence of probable cause is also fatal to the section 1983 malicious prosecution claim in Count II and the state law malicious prosecution claim in Count III. Cervantes v. Jones, 188 F.3d 805, 810-11 (7th Cir. 1999), cert. denied, 120 S. Ct. 1159 (2000) ("The existence of probable cause for the prosecution is a complete defense to an action for malicious prosecution under both Illinois

and federal law.").[7]  Moreover, because the police officer defendants are not liable on the state malicious prosecution claim, the City is also not liable. 745 ILL. COMP. STAT. 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). Accordingly, the defendants are entitled to judgment as a matter of law on these claims as well.

## Conclusion

For the reasons set forth above, there is no genuine issue of material fact on the claims Slaven asserts against defendants Galligan, Miedzianowski, Stack and the City of Chicago. Defendants' motion for summary judgment is, therefore, granted in its entirety. This is a final and appealable order.

**ENTER:**

UNITED STATES DISTRICT JUDGE

**DATED:** 2-27-01

---

[7] Of course, probable cause for arrest is not always probable cause for prosecution. There is nothing, however, in this record to suggest that exculpatory evidence came to light after Slaven's arrest that vitiated probable cause for his prosecution.

-9-